RICHARD J. NELSON (State Bar No. 141658)
E-Mail: *rnelson@sideman.com*
PETER M. COLOSI (State Bar No. 252951)
E-Mail: *pcolosi@sideman.com*
ANNA P. CHANG (State Bar No. 301468)
E-Mail: *achang@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone:    (415) 392-1960
Facsimile:    (415) 392-0827

Attorneys for Plaintiffs
Cisco Systems, Inc. and Cisco Technology, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CISCO SYSTEMS, INC., a California corporation, and CISCO TECHNOLOGY, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>DMITRI SHAITOR, an individual, and OD NETWORKS, a Maryland limited liability company, and DOES 1-50,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>1. TRADEMARK INFRINGEMENT, 15 U.S.C. § 1141(1)(a);<br>2. TRADEMARK COUNTERFEITING, 15 U.S.C. § 1114(1)(b);<br>3. FALSE ADVERTISING, 15 U.S.C. § 1125(a);<br>4. CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT;<br>5. CALIFORNIA UNFAIR COMPETITION, CAL. BUS. & PROF. CODE § 17200 et seq.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Cisco Systems, Inc. ("CSI") and Cisco Technology, Inc. ("CTI" and together with CSI, "Cisco" or "Plaintiffs"), hereby complain and allege against Defendant Dmitri Shaitor ("Shaitor"), and Does 1-50, inclusive (collectively "Defendants") as follows:

## I.   INTRODUCTION

1.   This case seeks to hold the Defendants accountable for the mass infringement and counterfeiting, and related unfair competition arising from Defendants' resale of Cisco products and services. Cisco brings this lawsuit to recover for the significant damage Defendants' illegal and infringing conduct has caused.

## II.   THE PARTIES

2.   Plaintiff Cisco Systems, Inc. is, and at all times mentioned herein was, a California corporation, with its principal place of business at 170 W. Tasman Drive, San Jose, California 95134. Plaintiff Cisco Technology, Inc. is, and at all times mentioned herein was, a California corporation with its principal place of business at 170 W. Tasman Drive, San Jose, California 95134. CTI owns the trademarks used by CSI in marketing Cisco-branded products.

3.   Defendant Shaitor is currently a resident of the state of Florida but was, during the relevant actions below, also a resident of the state of Maryland. Shaitor pleaded guilty to trafficking in counterfeit goods. According to the plea agreement, signed by Shaitor on March 3, 2017, Shaitor wholly owned OD Networks LLC ("OD Networks"). Shaitor caused OD Networks to import various networking components, labels, and specialized packing materials with counterfeit "CISCO" trademarks. Shaitor caused OD Networks to offer these products online via its eBay.com storefront – "od_net" – and, upon information and belief, a business-to-business trade board named ISP-Equipment.com. By selling these products online, Shaitor caused OD Networks to offer them for sale throughout California, including within this judicial district. On September 26, 2017, Shaitor was sentenced to six months home confinement with electronic monitoring, and three years of probation.

4.   Defendant OD Networks LLC ("OD Networks") is, and at all relevant times mentioned herein was, a Maryland limited liability company, with its principal place of business at 1701 Mt. Washington Ct., #A, Baltimore, Maryland 21209. OD Networks imported various networking components, labels, and specialized packing materials with counterfeit "CISCO" trademarks. OD Networks offered these products online via its eBay.com storefront – "od_net" – and, upon information and belief, a business-to-business trade board named ISP-Equipment.com.

By selling these products online, Shaitor caused OD Networks to offer them for sale throughout California, including within this judicial district.

5. Cisco is currently unaware of the true names and capacities of Does 1 through 50, inclusive, whether individual, corporate, associate, or otherwise. After discovery, which is necessary to ascertain the true names and capacities of Does 1 through 50, Cisco will amend this Complaint to show the true names and capacities of these Doe defendants and allege the necessary identifying details.

6. Cisco is informed and believes, and thereon alleges, that each of the Defendants designated herein as a Doe is legally responsible, in some manner, for the events and happenings herein referred to, and legally caused damages to Cisco as herein alleged.

7. Cisco is informed and believes, and thereon alleges, that Defendants undertook obligations or rights arising out of the subject events and happenings herein referred to, engaged in actions or omissions, either intentional or negligent, regarding the subject events and happenings herein referred to, and/or benefited unjustly from the efforts, work and goods of Cisco.

8. At all times relevant to this action, each Defendant, including those fictitiously named Defendants, was the agent, servant, employee, partner, joint venturer, representative, subsidiary, parent, affiliate, alter ego, or co-conspirator of the other Defendants and was acting within the scope of that agency, service, employment, partnership, joint venture, representation, affiliation, or conspiracy, and each is legally responsible for the acts and omissions of the others.

**III.  JURISDICTION**

9. This is an Action for violations of the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act").  This Court has original subject matter jurisdiction over this Action pursuant to the provision of the Lanham Act, 15 U.S.C. § 1121, as well as under 28 U.S.C. §§ 1331 and 1338(a) and (b).

10. This Court has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367, because these claims are so related to Cisco's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3    Case No._____
COMPLAINT FOR DAMAGES

11.     This Court has personal jurisdiction over Defendants because they have engaged in business activities in this district, misled consumers in this district, directed business activities at this district, committed the tortious acts complained of herein within this district, and have committed tortious acts with knowledge that the effects of their acts would be felt by Cisco, and others in this district.

## IV.    VENUE AND INTRA-DISTRICT ASSIGNMENT

12.     Venue is proper in this district, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Cisco's claims occurred in this judicial district, and a substantial part of the property that is the subject of the action is situated in this district.

13.     In accordance with Civ. L.R. 3-2(c), this action is properly assigned on a District-wide basis because it relates to Intellectual Property Rights.

## V.    FACTUAL ALLEGATIONS RELEVANT TO CISCO, AND ITS INTELLECTUAL PROPERTY

### A.    Cisco's Business And History

14.     Founded in 1984, Cisco is the worldwide leader in developing, implementing, and providing the technologies behind networking, communications, and information technology products and services.  Cisco develops and provides a broad range of networking products and services that enable seamless communication among individuals, businesses, public institutions, government agencies, and service providers.  Specifically, the thousands of engineers who work at Cisco develop and provide networking and communications hardware, software, and services that utilize cutting-edge technologies to transport data, voice, and video within buildings, across cities and campuses, and around the world.

15.     Since its founding, Cisco has pioneered many of the important technologies that created and enabled global interconnectivity.  During the past three decades, Cisco has invested billions of dollars, and the time and dedication of thousands of its engineers, in the research, development, and sale of industry leading networking and communications products and services.

16.     Cisco has also built up tremendous goodwill and brand reputation among consumers, including corporate and government consumers, through significant investment in

advertising, promoting, and delivering products, software, and services of the highest quality under Cisco's trade name and the family of Cisco-related trademarks (the "Cisco Marks"). Cisco has used the family of Cisco Marks to identify goods and services as being genuine and authorized, and therefore, the Cisco Marks are well-recognized signifiers of Cisco's best-in-class products, software, and services.

### B. Cisco's Trademarks

17. CTI owns all rights, title, and interest in the Cisco Marks, which are included on the Principal Register of the U.S. Patent and Trademark Office ("USPTO"). The Cisco Marks are well-known. They are used in connection with Cisco's networking hardware and software products and services. They include, but are not limited to, the following marks that are used in interstate commerce:

| Mark | Registration Number | Registration Date |
| --- | --- | --- |
| CISCO | 1,542,339 | June 6, 1989 |
| CISCO SYSTEMS | 1,996,957 | August 27, 1996 |
| CISCO | 2,498,746 | October 16, 2001 |
| CISCO | 3,759,451 | March 9, 2010 |
| CISCO | 3,978,294 | June 14, 2011 |
| CISCO | 4,263,591 | December 25, 2012 |

18. The Cisco Marks are distinctive, having no meaning outside of their use by Cisco in its course of business operations and in its advertising to distinguish its products and services. Cisco uses the Cisco Marks to advertise through a wide variety of media including television, radio, newspapers, magazines, billboards, direct mail, and web sites.

19. Cisco has attained one of the highest levels of brand recognition among consumers due to its extensive advertising and promotional efforts and its continuous use of its core Cisco Marks for the past three decades. As a result of Cisco's longstanding and widespread use and promotion of the Cisco Marks, Cisco customers around the globe have come to rely upon the Cisco Marks to identify Cisco's high-quality hardware, software, and services. Many of Cisco's

products are purchased by the U.S. Government, the military, hospitals, and by other industries, in critical and life-essential applications.

20. Cisco's customers associate Cisco's famous and well-known trademarks, including, among others, CISCO and the Cisco Logo exclusively with Cisco and Cisco's products and services. When consumers encounter these marks and decide to purchase goods and services identified by these marks, they expect to receive genuine Cisco products that have been produced by Cisco. Moreover, when consumers purchase products that are advertised as "new factory sealed," they believe that they are purchasing genuine products manufactured by Cisco that have not been tampered with from the time the product was sealed in its shipping packaging.

### C. Counterfeit And Otherwise Materially Different "Cisco" Products

21. Counterfeit products that bear markings similar to the Cisco Marks provide customers with a false assurance that the products they have purchased (1) are reliable and conform with Cisco's high standards, (2) come with applicable warranties, (3) can be placed under a Cisco service support contract (i.e., SMARTnet), and (4) come with all of the necessary accessories sold with the product that have been selected and approved by Cisco for use with the product.

22. In addition to harm to customers, the sale of counterfeit Cisco products also harms Cisco in many ways. Among these, counterfeit Cisco products which fail or degrade create the false impression that Cisco products are unreliable, thereby improperly tarnishing Cisco's reputation and causing Cisco to suffer lost sales and future business opportunities. When customers purchase Cisco-branded parts that are counterfeit and unreliable, their image of Cisco is diminished and Cisco's opportunity to sell genuine, high-quality products to those customers may be lost forever. As a result, Cisco suffers substantial and irreparable harm to its brand, image, business, and goodwill with the public. Cisco also suffers lost sales when customers purchase counterfeit products instead of genuine Cisco products.

23. Cisco and its customers are also harmed when high-quality Cisco-authorized accessories and/or components are replaced with accessories/components of unknown quality by counterfeiters or other unauthorized resellers. Cisco-authorized accessories/components,

including power cords, are high-quality and function properly with the corresponding Cisco product and operate safely for the region that the product is intended to be sold. Accessories/components from various third party suppliers often work together in one functioning unit. Not only does Cisco need to assess each particular accessory/component, but Cisco also conducts an end-to-end technical and safety assessment once the various components and other accessories are configured and working together.

## VI. ALLEGATIONS RELATING TO DEFENDANTS' UNLAWFUL SCHEMES

### A. **Defendants' Attempted Importation of Counterfeit "CISCO" Products**

24. Defendants, without the consent of Cisco, imported, distributed, transported, sold, or assisted in or caused the sale, importation, distribution, or transportation in interstate commerce of products bearing unauthorized reproductions, copies, counterfeits and colorable imitations of the Cisco Marks.

25. As stated in the plea agreement, an analysis of shipping and importation records maintained by U.S. Customs and Border Protection ("CBP") revealed that between November 29, 2012 and September 10, 2013, Shaitor and OD Networks received twenty-four separate shipments of various networking components, labels, and specialized packing materials ("Imported Products") from nine shippers located in Hong Kong and two shippers located in China. Nine of the shipments contained suspected Cisco transceiver components, shipped from Digicent Technology Company in Kowloon, Hong Kong.

26. On or around August 9, 2013, OD Networks attempted to import 312 "cisco labels" which were seized by CBP ("Seized Labels"). CBP sent Cisco a seizure notice bearing number 2013-4197-103945 and identified the importer of the Seized Labels as OD Networks, 1706 Mt. Washington Court Apt. E, Baltimore, MD 21209.

27. On or around October 11, 2013, OD Networks attempted to import 148 "Cisco" GLC-T transceivers which were seized by CBP ("Seized Transceivers"). On or around May 17, 2015, a Cisco original equipment manufacturer located in this judicial district confirmed based on samples that each of the Seized Transceivers were counterfeit. Cisco did not receive a seizure notice from CBP.

28.     On or about October 20, 2014, OD Networks imported 100 Cisco modules ("100 Modules") to the following address: 1706 Mount Washington Court, Apt. E, Baltimore, MD 21209.  Cisco determined that the 100 Modules were counterfeit.  According to the plea agreement, these products were not seized.

29.     As detailed below, the government was actively investigating Shaitor and in fact formally charged him with trafficking in counterfeit goods on April 20, 2017. Moreover, on May 10, 2017, Shaitor pleaded guilty to the charge, thereby admitting that he knowingly trafficked in counterfeit Cisco products.

30.     Nevertheless, on or around May 12, 2017, OD Networks caused a single "Cisco Catalyst Switch" to be shipped into Covina, California which was seized by CBP ("Seized Switch").  On or around May 16, 2017, a member of Cisco's brand protection team located in this judicial district reviewed pictures of the Seized Switch and determined it was counterfeit.  CBP sent Cisco a seizure notice bearing number 2017-2791-000270-01 and identified the importer as Brad Altenau, 1123 Park View Dr., Covina, CA 91724.[1]

31.     On or around August 18, 2017, the government requested that Cisco authenticate images of ten C3KX-NM-10G network modules ("Network Modules") that Shaitor was attempting to import.  On or around August 18, 2017, a member of Cisco's brand protection team located in this judicial district reviewed pictures of all ten Network Modules and determined they were counterfeit.

32.     Upon information and belief, CBP has seized approximately 471 counterfeit "Cisco" products that Shaitor and OD Networks has attempted to import.  Because CBP inspects only a small portion of all shipments coming into the United States, Cisco alleges that Defendants successfully imported counterfeit Cisco products that were not interdicted by CBP.

B.  **Cease and Desist Letters**

33.     Cisco has sent at least two cease and desist letters to Defendants.  On or about

---

[1] Altenau is listed as the importer. The exporter is listed as OD Network, Sam Liu, Qing Shang Yuan Community of North, An Ning Zhuang Street, Haidian District, Beijing, China 100085.

1   November 15, 2013, Cisco sent a letter to Shaitor d/b/a OD Networks stating that Cisco was aware
2   that OD Networks had attempted to import 312 labels that were seized by CBP due to them
3   bearing counterfeit "CISCO" trademarks.  In sending this letter: Cisco put Defendants on notice
4   that Cisco knew CBP had seized counterfeit products which Defendants had attempted to import;
5   Cisco warned Defendants not to buy from "unauthorized entities" selling cheap Cisco products
6   online; Cisco alerted Defendants of the severe legal consequences of buying and selling
7   counterfeit products; Cisco requested documentation surrounding the purchase of the products;
8   Cisco asked to review any other "Cisco" products in Defendants' inventory which had also been
9   purchased from the same vendor which sold the seized products; and Cisco provided a deadline by
10  which Defendants should respond to the letter.

11       34.     Having received no response, Cisco sent a follow up letter on January 8, 2014.
12  Only then did Defendant Shaitor respond by replying that "OD Networks LLC has never
13  purchased anything from, nor done any other kind of business with" the exporter referenced in the
14  letter.  Shaitor failed completely to provide any of the requested documentation surrounding the
15  purchase of the labels in question.

16       **C.     Execution of Search Warrant**

17       35.     On or about November 12, 2014, HSI Special Agents executed a search warrant at
18  Shaitor's residence at 1706 Mount Washington Court, Apt. E, Baltimore, MD 21209 and at Easy
19  Storage, 7401 Old Pimlico Road, Unit 4509, Baltimore, MD 20209 that was leased to Shaitor.
20  101 SFP-100-SR transceivers and 1 GLC-LH-SMD transceiver ("Seized Products"; collectively
21  with the Imported Products, Seized Labels, Seized Transceivers, 100 Modules, Seized Switch, and
22  Network Modules, the "Infringing Products") were seized and determined to be counterfeit.
23  Further, by signing the plea agreement, Shaitor confirmed that he knew these products were
24  counterfeit and that he intended to sell these products in the United States via OD Networks.

25       **D.     Sales of Products**

26       36.     On or about September 13, 2013, Cisco test purchased a "*NEW SEALED*
27  GENUINE CISCO GLC-LH-SM Gigabit SFP Module WARRANTY . . . " from OD Networks'
28  eBay store, "od_net."  The product was shipped to San Francisco, California.  As of August 12,

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

2013, od_net had 1,166 stars in eBay's feedback score system, indicating that it had made at least 1,166 sales.[2]  Payment was made to OD Networks' Paypal account, cisco@odnetworks.biz.

37. Upon information and belief, for the period between June 9, 2013 and September 6, 2013, OD Networks, through its od_net eBay store, sold 394 Cisco products for a total of $41,842.72.

38. Further, the od_net eBay store continued to sell Cisco-branded products after September 6, 2013, including within the three years prior to the filing of this complaint.  For example, a January 19, 2018 review of the feedback left on the od_net eBay store, showed that it had sold at least four Cisco products in the past twelve months (one "*NEW SEALED* ASR1001-X . . . CISCO Router" for $10,200, one "*NEW* WS-C3650-48TD-L 3650 Switch" for $2,200, one "CISCO CP-7975G . . . Phone" for $85.00, and one "CISCO ISR4351/K9 . . . Router" for $2,460.00).  Cisco contends that there are additional sales of Cisco-branded products by od_net for which it did not receive feedback.  In so doing, Defendants targeted their sales efforts to customers throughout the United States, including to customers in the Northern District of California.

E. **Criminal Plea Agreement and Sentencing**

39. Following HSI's investigation of Shaitor and OD Networks, an Information was filed against Shaitor on April 20, 2017.  The Information charged Shaitor with intentionally trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a).  On May 10, 2017, Shaitor formally waived his right to an indictment and pleaded guilty to the charge, admitting that he knowingly trafficked in counterfeit Cisco products.

40. Shaitor was sentenced with a Judgement entered on October 3, 2017.  He was sentenced to six months home confinement with electronic monitoring, and three years of probation.

---

[2] EBay's feedback score system awards one point for positive feedback per sale, adds zero points for neutral feedback per sale, and takes away one point for negative feedback per sale.  Thus, it is highly likely that OD Networks conducted well more than 1,166 transactions.

**FIRST CLAIM FOR RELIEF**
**Federal Trademark Infringement**
**(15 U.S.C. § 1114(1)(a))**

41. Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

42. The Cisco Marks and the goodwill of the business associated with them are tremendously valuable in the United States and worldwide because they are distinctive and universally associated in the public perception with the highest quality network and communications technology products and services.

43. Defendant has sold, offered to sell, distributed, and advertised infringing networking hardware products bearing Cisco Marks.

44. The differences between Defendants' Infringing Products and genuine Cisco goods are material. Cisco asserts on information and belief that having all original Cisco components and entitlement to warranty services are relevant to consumers' decision about whether, and from whom, to purchase Cisco products.

45. Defendants' actions have caused confusion, mistake, and deception as to the origin and quality of Defendants' Infringing Products because they are intentionally calculated to mislead the general purchasing public into believing that Defendants' Infringing Products originated from, are associated with, or are otherwise authorized by Cisco.

46. Upon information and belief, Defendants' infringing actions were committed fraudulently, willfully, and in bad faith, with knowledge of Cisco's exclusive rights to and goodwill in the Cisco Marks, or with willful blindness to the same, and with the intent to cause confusion, to cause mistake and/or to deceive.

47. Defendants' unauthorized use of the Cisco Marks constitutes trademark infringement of the federally registered Cisco Marks and has caused substantial damage to Cisco and to the reputation and goodwill symbolized by the Cisco Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

48. Defendants' conduct described above, including the unauthorized use of the Cisco Marks in interstate commerce, have directly and proximately caused substantial, irreparable injury

to Cisco and to the business and goodwill represented by the Cisco Marks, which leaves Cisco without an adequate remedy at law.

### SECOND CLAIM FOR RELIEF
### Federal Trademark Counterfeiting
### (15 U.S.C. § 1114(1)(b))

49. Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

50. Defendant has publicly advertised, sold, offered to sell, and distributed counterfeit Cisco products in interstate commerce in direct competition with Cisco and without authorization or consent to use the Cisco Marks but with full knowledge of Cisco's notorious prior rights in those marks.

51. Defendants' Infringing Products reproduce, counterfeit, copy, and colorably imitate the Cisco Marks or display a spurious designation that is identical with, or substantially indistinguishable from, the Cisco Marks. Defendant has applied its reproductions, counterfeits, copies, and colorable imitations of the Cisco Marks to labels, prints, and packages intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of Defendants' Infringing Products, which caused confusion, mistake, or deceived.

52. Defendants' unauthorized use of the Cisco Marks on or in connection with Defendants' Infringing Products was conducted intentionally and with notice and full knowledge that the use was unauthorized by Cisco. Accordingly, Defendants' actions constitute willful counterfeiting of the Cisco Marks in violation of 15 U.S.C. § 1114(1)(b) and entitling Cisco to treble damages and/or enhanced statutory damages under 15 U.S.C. §§ 1117(b) and (c).

53. Defendants' conduct has directly and proximately caused Cisco to suffer damage to the valuable Cisco Marks, and other damages in an amount to be proved at trial.

### THIRD CLAIM FOR RELIEF
### Federal Unfair Competition
### (15 U.S.C. § 1125(a))

54. Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

55. Defendants' resale of the Infringing Products that are designed to appear identical

to genuine Cisco products and thereby employ the same nature, style, look, and color as genuine Cisco products.  Moreover, as alleged above, Defendant sold products that had affixed counterfeit or infringing versions or reproductions of the Cisco Marks to unauthorized products and/or to the packaging, wrapping, etc., in which the Infringing Products are packaged.  This unauthorized use of the Cisco Marks was likely to cause confusion, to deceive, and to mislead the consuming public into believing that there was some affiliation, connection, or association between Defendant and Cisco and was likely to cause confusion, mistake, or deception as to the origin, source, sponsorship, authorization, approval, or affiliation of Defendants' Infringing Products.

56.     Defendants' actions, including the unauthorized use of the Cisco Marks in commerce, constitute false designation of origin, false or misleading descriptions of fact, and false or misleading representations of fact, which have caused confusion, mistake, and deception, as to Defendants' association or affiliation with Cisco, or lack thereof, as well as to the origin, source, and sponsorship of Defendants' Infringing Products, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

57.     Defendants' unauthorized and misleading use of the Cisco Marks constitute willful infringement of the Cisco Marks in violation of 15 U.S.C. § 1114(1)(b) and entitling Cisco to treble damages and/or enhanced statutory damages under 15 U.S.C. §§ 1117(b) and (c).

58.     Defendants' actions described above, including its unauthorized and misleading use of the Cisco Marks in commerce have caused substantial and irreparable injury to Cisco and to the business and goodwill represented by the Cisco Marks, thereby leaving Cisco without an adequate remedy at law.

**FOURTH CAUSE OF ACTION**
**California Common Law Trademark Infringement**

59.     Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

60.     Defendants' use of the Cisco Marks in connection with the marketing and sale of counterfeit and unauthorized "Cisco" products was likely to cause confusion, mistake, and deception as to whether these products are approved of, sponsored by, or somehow affiliated with

Cisco.

61. Defendants, via their eBay store, directed sales into California and sold at least one product into this judicial district.

62. Defendants' actions constitute common law unfair competition and trademark infringement and have caused Plaintiffs damages in an amount to be determined at trial.

63. Cisco alleges on information and belief that Defendant has derived substantial revenue and profits from its past unfair competition and trademark infringement, arising from its use of the Cisco Marks.

64. Defendants' actions have caused irreparable injury to Cisco.

**FIFTH CLAIM FOR RELIEF**
**California Unfair Competition**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

65. Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

66. California Business and Professions Code §§ 17200 *et seq.* prohibits acts of unfair competition, which includes any unlawful business act or practice.

67. Defendant has knowingly, willfully, and unlawfully infringed the Cisco Marks, including through the sale of infringing Cisco networking hardware products in violation of the Lanham Act, 15 U.S.C. § 1114(1).

68. As a direct, proximate, and foreseeable result of Defendants' sale of infringing Cisco networking hardware parts, Cisco has further been deprived of lost revenue and payments, and has therefore sustained injury in fact.

69. Defendants' practices were unlawful, and constitute unfair competition as defined by Cal. Bus. & Prof. C. §§ 17200 *et seq.* Defendants' actions have caused irreparable injury to Cisco.

70. Cisco seeks the full restitution by Defendant that is necessary and according to proof to restore any and all property and monies, including interest, acquired by Defendant, and all costs caused to Cisco as a result of Defendants' unlawful and unfair business practices.

///

**PRAYER FOR RELIEF**

WHEREFORE Cisco respectfully prays for the following relief:

A. For entry of judgment in favor of Cisco and against Defendant on each of Cisco's claims for relief alleged in this Complaint;

C. For a determination that Defendants' acts of trademark infringement constitute cases of willful and exceptional infringement;

D. For actual damages as a result of Defendants' unlawful conduct, alleged above, as well as any profits that are attributable to the alleged conduct and are not taken into account in computing Cisco's actual damages;

E. For maximum statutory damages available under the law to the extent Cisco elects statutory damages for any claim for relief;

F. For punitive damages to the fullest extent available under the law;

G. For reasonable attorneys' fees to the fullest extent available under the law;

H. For treble and/or enhanced damages to the fullest extent available under the law;

I. For full restitution, including restoration of all property unlawfully taken from Cisco, as well as any ill-gotten gains from the resale of Cisco's property;

J. For prejudgment interest and the costs of prosecuting these claims to the fullest extent available under the law;

K. For any additional injunctive, specific performance, and/or other provisional remedies, as appropriate; and,

L. For such other and further relief as the Court deems just and proper.

DATED: January 22, 2018           SIDEMAN & BANCROFT LLP

By: /s/ Richard J. Nelson
Richard J. Nelson
Attorneys for Plaintiffs
Cisco Systems, Inc. and Cisco Technology, Inc.

**JURY DEMAND**

Pursuant to Civ. L.R. 3-6 and Fed. R. Civ. Proc. 38, Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc. hereby demand a trial by a jury on all issues herein so triable.

DATED: January 22, 2018          SIDEMAN & BANCROFT LLP


By:  /s/ Richard J. Nelson
     Richard J. Nelson
     Attorneys for Plaintiffs
     Cisco Systems, Inc. and Cisco Technology, Inc.

2835-191\3440394